Your Honor, the second case of the afternoon, Fall 209-103, Haake v. Board of Education for Glenbard Township High School District 87. On behalf of the appellant, Mr. A. Lynn Hines. On behalf of the appellate, Mr. Jeffrey P. Kelly. Mr. Hines. Thank you, Your Honor. May it please the Court, I'm Lynn Hines and I represent the appellant, the Board of Education of Glenbard Township High School District number 87. In a breach of contract action, the contract should be interpreted so as to give meaning to all of its sections. In this particular action, the circuit court's decision ignores the duration clause in each of the three collective bargaining agreements. The duration clause provides... Excuse me, Counselor, what do we use, federal or state law here? Your Honor, I think that there is no state law that is right on point here and that is persuasive to look at the federal law. We found a number of cases that we believe are on point and they also interpret the common law of the law of contracts, which of course is what you guys do here. And so I think that that's the place to look since we can't find any other state cases, neither the court nor the other two parties in the case have been able to find any. Is there any concept in federal law that this stuff ought to be uniform across all the states and therefore there ought to be federal law applied to interpretation of labor agreements? No, Your Honor, I think not. I think instead we're really talking about just a contract interpretation case. It happens to be a collective bargaining agreement in both the instances. So the notion of there being some indication that federal law on interpretation of contracts, labor contracts, should be applied is you're just using that for persuasiveness, not required to file federal law? That is correct, Your Honor, just for persuasiveness. And I do believe that at least the Cherry case and the other two that we cite do, by turn, own the interpretation of contract law, the common law of contract interpretation. But the common law of the whole nation or in Illinois? In this instance, since we can't find any Illinois law right on point, I think this would be the place to look in order to make it the common law of Illinois. Okay, please go ahead. The federal cases that we were just speaking about, though, while we believe are persuasive, we think are especially instructive because they hold that the collective bargaining agreements benefits provisions terminate when the collective bargaining agreements end. Where there's been no ambiguity in the retiree language in those contracts and here where there is no express vesting of the retiree insurance benefit. Now, the retiree insurance language and the three collective bargaining agreements is silent on the duration of the benefit. Therefore, the duration clause at the end of the contract should control what we have here is a board payment of a single premium of insurance, quote, prior to 65. We believe is an eligibility criteria and not a duration criteria. And it's just as in the cherry case that we cite where a lifetime insurance benefits were not deemed to be duration, but they were eligibility. Now, in our particular case, we have a retiree language. We have a duration clause. They are not ambiguous. There's no latent ambiguity that we see in here. Since there's no express reservation in the retiree clause saying that these benefits are vested and vested forever and ever and ever, or when they become vested, then instead you look to the duration clause. That in the cherry case and in the bid like case that we cite is referred to as the bid like presumption. And here we believe since there is no ambiguity, that's exactly what you look at. The appellants, I'm sorry, the plaintiffs will argue that there was no way that anyone could take advantage of this till 65 language in the collective bargaining agreements that issued here. And therefore, there's a latent ambiguity. And they have already vested. But there's a flaw in that argument. Look to the duration clauses. The duration clauses say the contract starts on this day and it ends on this day. But it also says that the contract will continue on from year to year, remain in force from year to year, unless notice is given by either party that they want to change. And there's yet another circumstance where it could live on and on. And that is if the parties are bargaining a successor, collective bargaining agreement, and haven't reached agreement. During that term of the bargaining for a successor, the status quo ante prevails, continues on. And that's how these people could get to it. But I must point out one other thing. We don't believe that the plaintiffs here were privy of contract. When they retired, they were no longer employees. They were no longer members of the bargaining unit. The union bargained on their behalf while they were employees. After that point, the union was not bargaining on their behalf. And I'll come back to that argument in just a moment. The cases cited by the plaintiff here can be distinguished easily because those two cases are cases where we're talking about deferred compensation that was already vested. It was already earned. It was already vested. It couldn't be taken away. Here, we don't believe that the retiree insurance benefit vests. We think that because of the privity, the standing argument that we talk about later in our brief, there is no vesting. But if the court should find that there is vesting, then we believe that the vesting point is when you retire. Your Honor, there are five conditions for getting this benefit. You have to be under the age of 60. You have to have minimal service to the district of either 15 or 10 years, depending on the contract. You have to give your notice by the time that the contract requires, and that changed from one contract to the other. You have to retire and continue to be retired. You couldn't come out of retirement and go back to work for another school district and continue to collect this benefit from the Board of Education. And you had to participate in the teacher retirement assistance early retirement option. So we believe that it's a second tier of our argument that at least with regard to the 2007 plaintiffs, their contract was modified. They participated in the ratification of the 2007 collective bargaining agreement before they retired. That agreement said that you will pay, whether you're retired or active duty, 11 percent, 12 percent, 13 percent, depending on the year, towards the insurance premiums. These people were active employees when that contract was ratified. Now, the plaintiff will say— Aren't they third-party beneficiaries? I believe not. Why not? Yes, I believe they're not third-party beneficiaries because when—the Illinois law, at least on that portion, requires a newly expressed declaration as to who are the third-party beneficiaries. And that's not found in this collective bargaining agreement. When they are no longer employees, we believe that they're still no longer beneficiaries of the collective bargaining agreement. Well, I don't think it has to be in the bargaining agreement, isn't it? The law in Illinois that if a contract is entered into for the direct benefit of a third person, that third person may sue for breach of the contract if they were a third-party beneficiary. Only if it becomes vested, Your Honor. And we believe here that they were not vested. They were vested. Do not believe they were vested. And if they were vested— What's your basis for saying they weren't vested? The Cherry decision, the Rosado decision, and the Midlake decision. In those cases, the court said that the union is going to have to put nearly expressed language in there that there has been vested. Otherwise, the benefit dies with the collective bargaining agreement. And if the court decides that there has been vesting, we believe that the vesting only occurs upon retirement and staying retired. So that's why we make a distinction in this fallback argument of ours, this alternative argument, that the modification in 2007 only affects the class of 2007, the retiree class of 2007. It would not affect the others. So that if the court found that there was vesting, then all people prior to 2007 would be third parties and be third-party beneficiaries and would be able to collect. But the 2007 people going forward would not because they were employees when the contract was modified. We believe that the union and the employer, the only two that are in this contract— In fact, the 2007 retirees tried to file a grievance and tried to go through the grievance procedure. When they got to the step of the superintendent, the union disavowed the grievance and said, We're not going forward with this as part of the grievance procedure because we've already bargained this benefit, and the benefit is that retirees will pay the same as active duty employees, the 11 percent, the 12 percent. Now, how does that square with 9.0510 and 9.058 of the contract, where it talks about parties who decide to end early retirement and discontinue providing a list of benefits for future retirees? Those who were already participating in the plan would continue to receive the benefits. Then it goes on to talk about should the early retirement plan be terminated, individuals already on the early retirement plan and those who during the year have been approved for the plan will be allowed to continue despite the termination of the plan with respect to all other individuals. I mean, that's kind of contrary to what Terry is saying, isn't it? That language, Your Honor, I believe applies to the situation where if the state should drop the early retirement option, then the parties to this contract would have the right to drop the plan and bargain a replacement plan for it. Say that again? Yes. If the state should drop the teacher retirement system early retirement option, then the parties could drop this plan, this early retirement plan and bargain a replacement. If they do, those people that are already on the plan would continue to keep it. Now, whether or not that's enforceable, under my argument, I believe it may not be enforceable. Your Honor, it doesn't sound like it. If the way you're arguing it, how would they have the liberty? That's correct. That's correct. And I'm back to Jerry, back to Black and back to Russell. Your Honor, we believe there's another class of plaintiffs, the 23 plaintiffs who did not sign up for the early retirement option, which is one of the five criteria. Now, it was a mistake on our part to give them the benefits, but they didn't qualify. And we've given those benefits gratuitously without a contractual duty to give out these benefits. We think they should be accepted out also. Now, the plaintiff will argue that we should be stopped from declaring that at this late junction. But we have to point out that a stop on Illinois requires knowledge and intentional misrepresentation. Here, all we've got is a mistake on our part by including them when we shouldn't have. Their ultimate theory is that we have waived this argument and should not be able to remove that benefit. And yet, again, an Illinois waiver does not apply where the action is premised on mistake rather than on knowledge. Finally, I've mentioned earlier that we believe that the plaintiffs lack privity and lack third-party beneficiary status and therefore have no standing to sue. That was initially brought up in our 619 motion to dismiss. I would prefer to step down unless the court has some more questions for me. Good afternoon, and may it please the court. There are three things in the record in this case and in the arguments that show why the district is wrong and why summary judgment should be affirmed in this case. The first would be the clear language of the contracts themselves. The second would be the fact that the right to health insurance benefits had actually vested in these 106 plaintiffs. And the third would be the value or wisdom and applicability of the federal analysis. And with regards to the clear language of these contracts, these contracts contain what are set out in 9.05 as early retirement plans. I was going to ask you about 9.05. What do you believe that the language demonstrates in that section of 9.05 with respect to vesting? First, let me say that what that says is if you meet the criteria for years of service and age, that's in the 9.0501, and then if you decide you're going to retire and you give us this notice of retirement, which under the two prior contracts it says you can't back away from, you can't be allowed to withdraw from, in the 2001 contract it uses the term irrevocable notice of intent to retire. If you provide that and if you are approved as a participant, then you jump into 9.0504 or it's 9.0509 under the two prior contracts and 9.0510 under the 2001, which says in there that participants in the plan will have coverage paid for by the district until they reach the age of 65. There is no integration clause. And once you have accomplished all these steps, you have entitled yourself to this benefit. You have met the definition of vesting under Illinois law. And that is the contractual right. The district says in these plans that fulfill all these conditions and you get this benefit. That is enough for vesting to occur. And this is why we argue that the vesting occurs once you have jumped through all those hoops. You don't actually have to retire for the vesting to occur. If between the time you are approved as a participant and the time when you are scheduled to retire, you get terminated or quit for some other reason, that's an act of divestment as the court explained in Cooley's. It's not a requirement for eligibility. Eligibility is clearly set out in 9.0501. Eligibility is not in 9.0504. So, again, once you reach all of these criteria, not only are you entitled to this benefit and so in clear language the contracts should prevail in favor of the plaintiffs in this case, but you've reached that second point that I was going to reach, which is the vesting. They have clearly accrued this contractual right. And under the Illinois cases, that right cannot be taken away by subsequent collective bargaining agreements. Now, there was some mention with regard to assent for this class of 07. Having assented to the terms of the 07 contract. That, as I understand from the arguments today, is what's on the table. But the 07 contract didn't become effective until after they retired. And if you look at the Cooley's case, there was an argument raised by the employer there as well saying, well, you're trying to claim entitlement under the 1967 contract, but you worked for us after we modified this in 1975, so you're agreeing to the change we're making. And the court said, no, that right accrued under the 67 contract. You can't take that away. So the fact that this class of 07 retirees worked in 07, worked after some tentative agreement was reached, which was not part of the record, doesn't mean that they have assented to any modifications. The third aspect of this case that lays in our favor is actually the federal standard. The federal standard does not favor the defendant in this case whatsoever. The federal standard is, unlike pension plans, under federal law, there is no presumption that health insurance benefits vest. But the court said that's a rebuttable presumption that they don't continue beyond the extent of the contract. This standard, the CHERI standard that we're referring to in our briefs, occurs when there is no vesting, when there is no specific language of vesting. And it says that there's a rebuttable presumption, and if the contract is silent regarding the duration of the benefits, then this presumption carries unless there's a latent ambiguity. The presumption again originates where? I'm sorry? Where does the presumption originate again? This presumption occurs under federal law in BIDLAC. Right. So I asked your opponent earlier, are you not of the position that there's any mandate that federal law should apply across the board for uniformity in these situations? Absolutely not, because for the most part, federal law has all kinds of labor acts and ERISA that get entwined into the situation. Right. But this argument is out there, and I've got to address it. And the nice thing about the federal standard from our position is it weighs in our favor. This contract was not silent regarding the duration. This contract said, for you, Mr. Plaintiff, who has met all the criteria for eligibility and who retires, you get it until you reach the age of 65. The duration is known for every single plaintiff. The contract does not have an integration clause. It does not say, like in CHERI or BIDLAC or any of the other cases, during the term of this agreement, we will provide health insurance coverage. It says if you're a participant in the early retirement plan, you get these benefits until you reach age 65. Now, another aspect that the court brought up in CHERI and Roseto is that if there's something in the agreement that suggests a grant of lifetime benefits or use that language and say benefits for a specific duration, then a trial is to occur. But if there is expressed language in the contract setting forth the duration, the plaintiffs win. And we have specific language in this contract that says, flat out, you get this benefit until you reach the age of 65. The fact that the contract can be extended from one year to the next after it's set duration doesn't affect this. It does not affect Plaintiff A, who knows this expires when I reach 65. The fact that that contract may extend for 20 years doesn't come into play. And maybe a lot of people are relying on that promise. We don't need to address the issue of reliance except with regard to the third-party beneficiary status. And there, all we need to do under the Olson case is actually engage in an act which shows I have the specific language in here because I like the specific language that much. An act of faith in reliance on the contract. That act of faith was done by every single plaintiff in this case when, under the 2001 contract or the two prior contracts, they fulfilled their service and, more importantly, submitted their notice of intent to retire. Now, the issue is brought up that they don't have standing to bring these claims. In every single case regarding retiree benefits that has been presented to this Court, retirees have been allowed to present those claims except in the UAL case, which was muddied up by the bankruptcy code. And even in the UAL case, they said that beneficiaries under a welfare plan established by a collective bargaining agreement could bring a claim. And whether you want to catch it in terms of privity, whether you want to catch it in terms of third-party beneficiary status, somebody has to have the right to bring the claim for these plaintiffs for the breach of these provisions. And it's not the union because they no longer represent these teachers or these retirees. It has to be the retirees themselves. And when you have early retirement plans which set out prospective retirement benefits for retirees, you've met the criteria for third-party beneficiary status should be allowed to bring this claim. There is also some confusion with regard to 9.0510 and 9.0 – I'm sorry, looking at the 2001 contract, 9.0508, which is should the plan be terminated, then those participants and those approved as participants will get to continue. Looking at that, it's completely different than 9.0511 where they talk about should the state retirement plan be discontinued than a procedure set forth. If they're not the same thing – in fact, within the ERP, the early retirement plans within these three contracts, the phrase early retirement plan only refers to the early retirement plans established by the district. Anytime there's a reference to a state plan, that reference is spelled out as referring to the state plan itself. So there is no question here regarding the applicability as to these plaintiffs. With regard to the TRS, there is no TRS early retirement plan. There is an ERO, and the district throughout these plans has made use of the phrase ERO. They have not made use of the phrase in any other way than referring to the early retirement option. There are retirees who were approved who did not follow the ERO. The ERO is only a way to receive your full annuity, but there is no requirement for eligibility under these plans to have elected to do the ERO. The only requirement is to complete the required tenure, to be of the age, and to submit your notice, and to be approved by the district. And the testimony in this case is these people were all approved before June 29, 2005, that critical date in the 2006 memorandum. All of them were approved as participants in the early retirement plan, and they're entitled to this benefit. And on that basis, we would ask this court to affirm the summary judgment. What's your position regarding your counsel alleging that you waived this issue? I don't believe that the argument is that I have waived the issue. The argument is that they have waived it. Are we talking about the TRS? Yes, the TRS. They never raised that as a condition preceded in their affirmative defenses. That's one procedural aspect. The other aspect is they've never asserted it before until this litigation came up. And for all this time, it's a condition that, by law, they can ignore. And they did so by continuing to cover these people if, in fact, that's really a reason to deny them coverage. They're claiming today that they're excused from that because of a mistake. And I would submit to the court that it would have to be a mutual mistake. There was no mistake on our part. If there was a mistake regarding the interpretation or the applicability, it would rest with the district. And unilateral mistake does not excuse the waiver of a condition preceding. Thank you, counsel. Thank you. Your Honor, if I could pick up from just that point, this is a contract case that was decided on summary judgment. There has been no trial. There has been no subjective evidence put in. At one point in my opponent's argument, he mentioned that, as an act of faith of retirees, took on the retirement. That's not what's before you today. We're here to interpret the collective bargaining agreement as a contract. As Justice O'Malley asked me at the beginning about the federal case law and its impact on here, I believe that it is not the federal case law that we're trying to ask you to apply here, but instead the common law of contracts. And, of course, there is a state statute, 5 ILCS 50-1, that expressly adopts the common law of England. So that's how we're trying to get this case before you and this line of cases before you. I will note that the Illinois Educational Labor Relations Act, which governs the rights and duties between the unions and the employers, the school district employers, is modeled after the National Labor Relations Act. And so that's how it is also interpreted. Now, you've heard me say that we believe that these rights were not vested and that we believe that if they are vested, they're not vested until you've completed all of the duties, including retiring and staying retired. The being less than 60 years old comes from the teacher retirement system, early retirement option. You have to be less than 60 years old, between 55 and 60. You have to have fewer than 35 years of service in the teacher retirement system, and then you can qualify for this. And the early retirement option is something that graphs on top of what you would have gotten from the state to make it appear as though you were 60 years old when you start drawing your annuity. That's the purpose of this. The early retirement plan of the collective bargaining agreement graphs on top of the early retirement option for those people that have not yet reached the age of 60. Let's see if I have anything else that I would like to say. How do you address 9.05 with respect to vesting? I believe that it has not vested at all, and if it does, it does invest until you retire and stay retired. And I would point out that the 9.05.08 talks about if the plan is terminated. That's not what we have before you. What we have before you is a modification of the plan so that the retirees will pay the same amount as the active employees, or, of course, as the contract says, they could choose to have the Board of Education pay 100 percent of their premium by going to the teacher retirement system insurance, which is a PPO. Did they consent to the modification? We believe that they did consent. They were employees at the time that the 2007 collective bargaining agreement was ratified, and so they were represented by the union that made that decision for them. And that's further buttressed by the union's declaration that they would not go forward with agreements by these folks because they had already bargained their rights, and their rights were that they would pay the same as active teachers. Well, you're just talking about, counsel, how the conditions under which they retire and then they give up this, and, you know, if they're 60 years old or under a certain number of years for this early retirement plan that you were talking about, shouldn't they? I mean, aren't they relying on a promise that you made to them with respect to this early retirement? I mean, if they hadn't been made this promise, perhaps they wouldn't have retired. I think that they read this language and they believe that these are the benefits that are available to them. The problem is that they're represented by the union, and unless there's expressed language in there on the best team, I believe that that can be changed at the expiration of the collective bargaining agreement. They're relying on that benefit until they're 65. They rely on that benefit up to the time that they retire. I think beyond that time, they have no voice in the race. That's not a good way of phrasing it. May I back up and say they don't have a voice? All right. Thank you, counsel. Thank you both for your arguments.